creditors refrain from proving their debts until they learn that there is to be a dividend, and that information ordinarily comes when notice of a second meeting comes. The claim of Welsh Brothers, at the amount of $21,-024.46, is set forth in the bankrupt's schedules. They are, therefore, known creditors, and entitled to notice of the second meeting, to be given to them by mail, in order that they may prove their debt. Such notice would naturally be notice to them that there was to be a dividend. I understand the certificate of the register to import that no notice has been sent to them by mail, of the time and place of the second meeting. Because of this defect the second meeting is irregular, and it must be adjourned until the defect can be remedied by sending notice to them, and giving them a sufficient time and proper opportunity to prove their debt.

In accordance with this decision, the adjourned second meeting was held, of which due notice was sent to Welsh Brothers, who, however, did not prove their claim. The creditors thereupon, at the adjourned meeting, voted a dividend of seventy-five per cent. on the debts proved. The assignee objected to this distribution of the assets, claiming that it was not competent, at the second meeting to pay a larger percentage than the fund in hand would be sufficient to pay on all the debts, whether proven or not.

The register overruled the objection, holding that, under the 27th and 28th sections of the bankruptcy act, the whole fund in the hands of the assignee should be distributed at the second meeting, less such sum as should be retained for expenses and contingencies, unless good cause were shown to the contrary, and that here no such cause was shown. On request of the assignee, the question was certified to the court.

BLATCHFORD, District Judge. I concur in the conclusion of the register.

---

## Case No. 9,611.

### In re MILLS.

[11 N. B. R. (1875) 74.] [1]

District Court, S. D. New York.

BANKRUPTCY—PARTNERSHIP—DECEASE OF ONE—RIGHTS OF CREDITORS.

1. B. & M. were partners in business under the firm-name of B. & Co. B. died, and after his death M. carried on the business with the consent of B.'s administrators, the property and assets of the firm remaining in his possession and under his control. He was subsequently adjudged a bankrupt, and an assignee was appointed who took charge of the property. *Held*, that the creditors were entitled to be paid pro rata out of the funds in the hands of the assignee without regard to the fact whether the debts were contracted before or after the death of B.

[Cited in Vetterlein v. Barnes, 6 Fed. 705.]

[1] [Reprinted by permission.]

2. M. was carrying on business on his sole account, having converted the property of his deceased partner to his own use with the knowledge and consent of B.'s administrators.

3. The fact that a creditor may have recourse to the estate of B. for any unpaid balance, does not affect his right to an equal participation in the fund in the hands of the assignee.

4. The administrators may prove in bankruptcy against the estate of M. for any claim they may have, for the interest of B. in the copartnership.

By I. T. WILLIAMS, Register:

I, the undersigned register, in charge of the above entitled matter, do hereby certify and report, pursuant to the order of this honorable court made in this matter, bearing date the 5th day of May, 1874, that I have been attended by counsel for the respective parties, to wit: by Mr. Abbott and Mr. Hodges, for James Bown and Elizabeth M. Mills, and by Mr. Lewis, for Elizabeth Anne Bate, Mary E. Denike, and Thomas Henry Bate. That I have taken all the testimony offered by each and all of said parties, which said testimony is herewith handed up. I am of opinion that the business of the late firm of Thomas H. Bate & Co. was not continued or carried on after the death of said Bate, in March, 1870, by the said [William] Mills, jointly with the administrator and administratrix, or by the legal representatives of the said Bate. The evidence does not satisfy me that there was any contract of copartnership, either expressed or implied, entered into between those parties. The property of the firm was permitted to remain in the possession of Mills, the surviving partner, who, although he continued to carry on the business in the name of the late firm, used and disposed of the property as if it had been his individual property, until it had so far changed its character or become confused with goods acquired by him after the decease of Bate, as to render it inseparable therefrom. It is not necessary here to decide what may be the rights of the administrator and administratrix of Bate in the premises upon an accounting with the surviving partner or otherwise. It is clear that creditors whose debts were contracted in the course of the business since the death of Bate, are entitled to be paid out of the funds in the hands of the assignee. It is equally clear that debts contracted by the firm prior to the death of Bate, are alike entitled to be paid out of this fund. But were it otherwise—were it true, as it is contended, that after the decease of Bate, his administrator and administratrix entered into a contract of copartnership with Mills, and put in all the property that had come to them from the estate of Bate, and had carried on that business jointly with Mills up to the time of the bankruptcy, it is not perceived how that would change the result. It could not in that case be doubted that moneys which had come to the hands of the assignee from the sale of the assets of the firm, would be liable

for all the debts contracted in the business since the commencement of the copartnership between the administrator and administratrix and Mills. It is true that in that case it would be necessary to adjudge the other members of the firm—the administrator and administratrix—bankrupt, in order to get jurisdiction over their interests in the partnership property. But the whole partnership property would nevertheless then, as now, be subject to the payment of the partnership debts contracted since the commencement of such partnership. It would also, in like manner, be subject—in equity—to the debts contracted by the firm of Thomas H. Bate & Co. before the death of said Bate, for it is the same property now, in equity, that it was during the life of Bate, when such debts were contracted; the administrator and administratrix having added nothing to it. But I base my opinion upon the former ground, and hold that Mills has been, since the death of Bate, carrying on business on his sole account. He has converted the property of his deceased partner to his own use; but this has been with the knowledge and consent of the administrator and administratrix, so that the liability of Mills to the administrator and administratrix for this property, or rather the claim of the administrator and administratrix against him for the interest of the intestate in the partnership property, would sound in contract and not in tort—thus vesting in Mills, at law, the entire title to all the partnership property of the late firm of Thomas H. Bate & Co. If, then, the entire assets in the hands of the assignee pertain to the separate estate of the bankrupt Mills, and the estate of Mills as surviving partner of the late firm of Thomas H. Bate & Co. has contributed nothing to this fund, it is clear that it is subject to distribution among the creditors of Mills of an equal degree. It is not material whether the debts proven against this estate are owing by Mills alone, or by Mills jointly with the estate of Thomas H. Bate—in either case Mills is liable for the whole of such claims—and the fact that a creditor may have recourse to the estate of Bate for any unpaid balance, does not affect his right to an equal participation in the fund, in the present state of the case. Should such creditor, after receiving a proportion of his claim from the assets of Mills, afterward receive the balance, or any part of the balance, of his claim from the estate of Bate, that would be his good fortune, and the individual creditors of Mills could not be heard to complain of it, as the assignee would have the usual right of joint debtors to claim from that estate a contribution, in case the creditor should have got more than the half part of his claim out of the estate in bankruptcy, which sum so received, by way of contribution, would come into the fund in bankruptcy for distribution among the creditors. Nor can the creditors who have established claims against the late firm of Thomas H. Bate & Co. claim any preference over the creditors of the individual estate of Mills, as the late firm has contributed nothing toward the fund in the hands of the assignee; the bankrupt Mills, having acquired a legal title to all the interest Bate had in the copartnership property at the time of his death, must be considered to have contributed this whole fund from his personal estate. Whatever claim the administrator and administratrix may have against Mills for the interest of Bate so acquired, they are at liberty to prove in bankruptcy and participate in the dividend.

The testimony of Mills and others going to establish what counsel have called a continuation of the partnership after the death of Bate, has not been overlooked, nor is any distrust intended to be thrown upon the good faith of Mills. But a close analysis of this testimony will show that he had conceived the impossible thing of a partnership with a dead man. I don't understand him to mean to testify that he was in partnership with the administrator and administratrix personally. He seems to think that with their consent he could continue the partnership with his deceased partner. But it is obvious that no such partnership could by any legal possibility exist.

Having come to the conclusion that all the claims for which Mills is liable—whether individually or jointly with the estate of Bate—are payable ratably in their statutory order out of the funds in the hands of the assignee, I proceeded to examine the respective claims, pursuant to the directions of the order aforesaid. Touching the claims referred to in the petition, being the only disputed claims, I see no good reason to doubt the validity and justness of the claim of James Bown for two thousand six hundred and nine dollars and fifty-two cents, and interest up to the day of the adjudication of bankruptcy. It is a claim that accrued after the death of Bate, for which Mills only is liable, and it is properly proven in bankruptcy. The claim of Elizabeth M. Mills, the wife of the bankrupt, for one thousand and fifty-seven dollars and three cents, and interest up to the day of the adjudication of bankruptcy, is properly proven, and there is no evidence that should invalidate it or throw any suspicion upon its justness. It accrued after the death of Bate, and it is a claim against Mills alone. The claims of Mary E. Denike and Thomas Henry Bate for two thousand nine hundred and fifty-seven dollars and forty-one cents each, and interest up to the day of the adjudication of bankruptcy, rest upon a joint judgment in their favor against Mills as surviving partner of Thomas H. Bate & Co. The claims accrued during the lifetime of Bate, and were prosecuted to judgment after his death. These claims are properly proven, and I see nothing in the testimony or proceedings before me that should invalidate or

cast suspicion upon them. The claim of Elizabeth Anne Bate, widow of the said Thomas H. Bate, deceased, for three thousand two hundred and sixty-two dollars and thirty-seven cents, and interest up to the day of the adjudication of bankruptcy, has been attacked by other creditors and considerable suspicion has been thrown upon it by the testimony. It is claimed to have accrued in 1861 or 1862, during the existence of the firm of T. H. Bate & Co., from a loan of money made by her to the firm through the agency of the executor of her father's estate. This attack is made principally by the counsel for Mrs. Mills, who was also solicitor for the bankrupt, who filed the schedules in bankruptcy which specify this claim among the liabilities of the bankrupt. Mills, when upon the stand, is not interrogated concerning this claim by either counsel. It appears that prior to the bankruptcy, to wit, in July, 1873, a judgment in the supreme court of this state was obtained by default against Mills alone for this claim, which judgment was, after the first proof thereof had been filed in bankruptcy by an ex parte order of that court, amended so as to be now against Mills as surviving partner, etc. If this claim be invalid, there must have been collusion between Mrs. Bate and the bankrupt as long ago as July, 1873. But there is no proof before me of any such collusion, and the testimony as well as all the proceedings before me render any such collusion quite improbable. I am therefore of opinion that her claim should be sustained and allowed, and that she should be paid ratably out of the fund.

The whole amount of the assets that have come to the hands of the assignee, appears to be fourteen thousand five hundred and thirty-six dollars and fifty-seven cents ($14,-536.57), all of which I am of opinion are the individual assets of William Mills. I therefore recommend the entry of an order accordingly.

BLATCHFORD, District Judge. Let an order be entered according to the recommendation of the register.

---

## Case No. 9,612.

### In re MILLS.

[17 N. B. R. 472.] [1]

Circuit Court, S. D. New York. April 6, 1878.

BANKRUPTCY—RECEIVER OF CREDITOR—RIGHT TO PROVE DEBT—DEPOSITION.

A receiver of the property of a creditor of the bankrupt is an assignee of the debt due to such creditor and may prove it in the bankruptcy proceedings; but the proof must be supported by the deposition required by general order No. 34. The deposition may, in the first instance, be ex parte, as in form No. 22.

Hearing upon petition for re-examination of proof of B. Reilly, receiver. The assignee

[1] [Reprinted by permission.]

claims the examination of the original creditor. The receiver declares himself ready to submit to an examination. The assignee contends that the original creditor is the person to whom the bankrupt [William Mills] owed the debt at the time of the adjudication. The assignee claims, secondly, that the proof should be supported by the deposition of the original creditor under rule 34. The receiver holds that the claim, having been transferred to him by operation of law, is not within rule 34. The assignee also contends that Reilly, receiver, is not entitled by law to prove the debt in this bankruptcy. It is admitted that the original claimant resides in England. The assignee moves to expunge the claim. The register asks if there is any objection to his making such order as he may see fit in the matter. Mr. Whitney declines to answer, upon the ground that the register has no authority to require an issue till he decides the claim should be expunged, and that the question of the register is not pertinent until his ruling is made. The assignee objects to the register making any order except to expunge or diminish the claim. The register says he will reserve his decision.

By J. W. LITTLE, Register:
I think, in the re-examination of the claim filed by Reilly, receiver, in the above matter, that the motion that I should require the original claimant to present himself for examination or cross-examination by the assignee should be denied. And, further, I do not think this is a case where a deposition should be required by owner of claim at time of commencement of proceedings, according to G. O. No. 34.

W. F. Scott, for assignee.
Mr. Whitney, for receiver.

BLATCHFORD, Circuit Judge. I think that Reilly, as receiver, is an assignee of the debt, and as such assignee may prove it. But, as it was assigned before proof, the proof must, and to make it receivable at all, be supported by the deposition required in general order No. 34. The deposition may in the first instance be ex parte, as in form No. 22. The proof was irregular because not supported by such deposition, and should on that ground be expunged.

---

## Case No. 9,612a.

MILLS v. The BAY STATE.

[See Case No. 1,148.]

---

## Case No. 9,612b.

MILLS v. CHAPMAN et ux. (two cases). [1]

Circuit Court, D. Connecticut. Dec. 7, 1876.

HUSBAND AND WIFE — PURCHASE OF LAND BY WIFE—JOINT NOTE—HOW PAID.

[The mere giving of a joint note by husband and wife in part payment for land purchased by

[1] [Not previously reported.]